**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **ARASH FARASAT, OMER CELTIK,** | § | |
| **and KEVIN MCGOWAN,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:13-CV-270-L** |
| | § | |
| **RP MANAGING PARTNERS, LLC;** | § | |
| **R.P. VALET PARKING, INC.; and** | § | |
| **ROOZBEH "RP" PAYERVAND,** | § | |
| **Individually**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs Arash Farasat, Omer Celtik, and Kevin McGowan's (collectively, "Plaintiffs") Motion for Default Judgment (Doc. 57), filed May 19, 2014.  On November 13, 2014, the court granted Plaintiffs' Motion for Default Judgment as to RP Managing Partners, LLC, R.P. Valet Parking, Inc., and Roozbeh "RP" Payervand's (collectively, "Defendants") with respect to liability.  On December 2, 2014, the court held a hearing to determine the reasonable amount of damages to award to Plaintiffs.  After careful review of the motion, affidavits, applicable law, and record, the court determines that Arash Farasat ("Farasat") in entitled to $172,635.22 in damages; Omer Celtik ("Celtik") is entitled to $37,952.42 in damages; and Kevin McGowan ("McGowan") is entitled to $56,905.70 in damages.

### I.     Background

Farasat filed this action on January 22, 2013, alleging claims for violations of the Fair Labor Standards Act ("FLSA").  Farasat contends that he was not paid the minimum wage, in

Memorandum Opinion and Order – Page 1

violation of 29 U.S.C. § 206; that he was not allowed to keep all the tips he earned, in violation of 29 U.S.C § 203(m); and that he was improperly terminated in retaliation for engaging in protected activity, in violation of 29 U.S.C. § 215(a)(3).  On May 19, 2014, Celtik and McGowan sought to opt-in as additional Plaintiffs in the suit.  On November 13, 2014, the court determined that Celtik and McGowan were proper parties and granted Plaintiff's Motion for Default Judgment as to Defendants' liability.

The FLSA provides a national minimum wage of $7.25 per hour that employers are required to pay their employees. 29 U.S.C. § 206(a).  If an employee works more than forty hours per workweek, the FLSA further requires employers to pay employees overtime compensation at a rate of "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).  Pursuant to 29 U.S.C. § 203(m), there is an exception to the minimum wage for tipped employees.  Employers are permitted to pay such employees at a rate of $2.13 per hour, provided tips received by the employees make up the difference between the national minimum wage of $7.25 and $2.13 per hour.  *Montano v. Montrose Rest. Assocs, Inc.*, 800 F.3d 186, 188 (5th Cir. 2015).  This is referred to as a tip credit.  *Id.* (internal quotations omitted).

For the most part, an employer seeking to claim the tip credit must allow tipped employees to keep all of the tips earned.  *Id.*, 29 U.S.C. § 203(m).  The FLSA provides a limited exception that allows employers to pool tips among its employees.  An employer must inform its employees of a pooling arrangement to claim the tip credit.  29 U.S.C. § 203(m).  The FLSA also prohibits an employer from discriminating against an employee in retaliation for filing a complaint under or related to the FLSA.  29 U.S.C. § 215(a)(3).

**Memorandum Opinion and Order – Page 2**

## II.   Analysis

### A.   Arash Farasat's Compensatory Damages

#### 1.   Unpaid Wages

Farasat seeks an award of $229,357.66.  This amount includes compensatory damages for Defendants' violations of the FLSA pursuant to 29 U.S.C. §§ 203(m), 206, and 215(a)(3), and liquidated damages.

During the December 2, 2014 hearing, Farasat testified and provided exhibits to explain the methodology used to determine the amount of damages he requests.  To determine his damages for his unpaid wages, Farasat calculated the number of hours he worked during four different periods of his employment: (1) January 23, 2010, to January 21, 2011; (2) January 22, 2011, to March 4, 2011; (3) March 5, 2011, to March 16, 2011; and (4) March 17, 2011, to November 14, 2012.  According to Plaintiffs' Exhibit A, Farasat worked 31 hours per week during the first period of his employment; 31.5 hours per week during the second period; 33.5 hours per week during the third period; and 31.5 hours per week during the fourth period.  Farasat testified that he was paid $2.13 per hour.  Plaintiffs' Exhibit B calculates how much he was paid each week based on his $2.13 per hour salary, and how much he was owed to be paid the minimum wage required by the FLSA, which is $7.25 per hour pursuant to 29 U.S.C. 206(a)(1)(C).  Exhibit B includes adjustments for sick days taken over the course of Farasat's employment.  During the relevant period, Farasat worked a total of 4,671.5 hours and was paid $9,950.30.  Defendants failed to pay Farasat $23,918.08 ($5.12 x 4,671.5 hours) that was lawfully owed to him in wages.  Accordingly, there is sufficient evidence in the record to support an award of **$23,918.08** for unpaid wages.

## 2.  Withheld Tips

According to Farasat, Defendants withheld tips from Plaintiffs and charged them for cars parked during their work shifts.  To determine the amount of tips withheld, Farasat testified that he estimated, to the best of his recollection, the average number of cars parked during a particular shift.  That amount was then multiplied by the amount he was charged by Defendants.  According to his testimony, Defendants took a fee per car parked.  That fee varied, depending on the time of day, the day of the week, and the location of the restaurant — that is, whether it occurred on a lunch or dinner shift, Thursday or Saturday, or at a particular restaurant.  Farasat was charged between $1.30 and $3.00 per car.  Farasat explained that Defendants tracked the fees owed through a ticket system.  Valets used one ticket per car, and at the end of the shift, Defendants would charge the employees for the number of tickets used based on the fee for that shift.  Employees were charged the fee regardless whether they received tips for each car parked.  The amount deducted from each individual valet was not redistributed among all the employees.

According to Exhibit B, Farasat calculated that $75,426.69 in tips was withheld from him from January 29, 2010, to November 14, 2012.  In his declaration submitted with the motion for default judgment, Farasat stated that $60,167.74 in tips was withheld from him for the same time period. Farasat's Exhibit A indicates that he parked 40 cars on average during the Sunday shifts for all four periods of his employment and Defendants withheld $3.00 per car, while his declaration states that he only parked 10 cars on average during his Sunday shifts and Defendants withheld $1.55 per car.

 The hearing on damages was held to prove up damages sought in the motion for default judgment.  Farasat did not provide the court with any explanation or proof to support the increase

in the number of cars attributed to his Sunday shifts. Accordingly, the court will exercise its discretion and use the numbers provided in the declaration to calculate Farasat's withheld tips.

According to Farasat's declaration, during one period of his employment lasting approximately fifty-two weeks, he parked an average of 206.5 cars per week, and Defendants deducted $400.70 in tips per week. Accounting for two missed shifts, Defendants withheld $20,637.50 in tips during that period. During the second period of his employment, a period spanning forty-two weeks, Farasat parked an average of 200.5 cars per week, and Defendants deducted $408.21 in tips per week. Subtracting two missed shifts, Defendants withheld $16,945.50 in tips during that period. For the third period of employment spanning fifty-three weeks, Farasat parked 209 cars per week, and Defendants deducted $429.88 of his tips per week. Subtracting two missed shifts, Defendants withheld $22,584.74 in tips during that period. Based on the information provided in Farasat's declaration and the hearing, there is sufficient evidence on the record to support an award of **$60,167.74** in damages for withheld tips.

### 3.  Lost Wages

When an employer is found liable for violations of 29 U.S.C. §215(a)(3), it will be liable to the employee "for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of [the FLSA], including . . . the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. 216(b). The court previously determined that the Defendants are liable for terminating Farasat in violation of §215(a)(3). Farasat seeks $53,208.28 in lost wages. According to Farasat's testimony, this amount reflects $17.25, which is what he believed he earned per hour, multiplied by 33.5, the highest number of hours he worked per week for a total of $577.88 for sixty-eight weeks. The amount is then offset by earnings at a new

employer.  It is reduced by $150 for twenty-five weeks for an amount of $427.88; it is further offset by an increase in earnings of $325 for an amount of $252.88 for thriteen weeks.  Farasat testified that $17.25 reflected the minimum wage, $7.25, plus $10 per hour, which was the average in tips he believed he took home while employed.  During the hearing, the court questioned Farasat to determine the accuracy of his claim that he earned $10 per hour.  Farasat could not provide any proof of his previous earnings.  He testified that he had difficulties filing his 2010 and 2011 tax returns, and, therefore, he did not file taxes in either 2010 or 2011.  Plaintiff's counsel explained that the additional $10 was calculated by taking an average of the cars Farasat parked per week and multiplying that by $3, an amount they presumed to be an average tip.  This amount is then reduced by the amount Defendants charged Farasat, and divided by the number of hours he worked. While Farasat is entitled to damages for his lost wages, there is not sufficient evidence in the record to support the amount requested.

The court has recalculated Farasat's lost wages and determined his damages to be $32,315.66. This calculation was done by first finding the average number of hours Farasat worked per week, as opposed to the highest number, excluding the week of his wrongful termination. Based on the number of hours reflected in Exhibit C, Farasat worked an average of 31.83 hours of work per week.  The court next determined a reasonable amount of tips as $6.31 per hour.  This amount is based on the average number of cars, 200.5, Farasat indicated he parked per week in final period of his employment multiplied by an estimated average tip amount of $3 per car ($601.50).  The court then reduced the amount by $400.70, which is the lowest amount in tips Defendants deducted per week during Farasat's employment, leaving $200.80 in tips per week. This amount was then divided by the average hours worked (as previously determined).  The

**Memorandum Opinion and Order – Page 6**

calculated tip amount, $6.31, was then added to the statutory minimum wage, $7.25, and multiplied by the average number of hours per week worked to obtain Farasat's unpaid weekly wage, $431.61. This amount was then properly offset by $150 in earnings for twenty-five weeks and $325 in earnings for thirteen weeks.  *See Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006) (holding that lost wage awards for FLSA cases should be offset with posttermination earnings).

Remedies under the FLSA must be consistent with those provided under the Age Discrimination in Employment Act ("ADEA") because both statutes have the same remedy provisions.  *Johnson*, 473 F.3d at 222.  A plaintiff suing for back pay under the ADEA has a duty to mitigate his damages.  *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). ADEA precedent is instructive in this instance. In his declaration, Farasat indicated that it took him 105 weeks to find another job, but he did not give more details to the court about the diligence of his search.  The employer is required to show proof of failure to mitigate.  *Id.*  Here, Defendants have not appeared or provided any evidence that Farasat was not diligent in efforts to find employment after his unlawful termination.  Accordingly, the court will not adjust the damages for lost wages for failure to mitigate.  Farasat testified that he received $105 per week in unemployment compensation for about a year.  The court reasonably estimates that he received about $5,460 in unemployment compensation; however, that amount is not reflected in his calculation of retaliation damages.  The decision to deduct unemployment compensation is within the discretion of the court.  *Marshall v. Goodyear Tire & Rubber Co.*, 554 F.2d 730, 736 (5th Cir. 1977).  To fashion a fair and adequate remedy as required by the statute, the court will deduct the estimated amount of unemployment compensation received from Farasat's retaliation damages.

Accordingly, the court determines there is sufficient evidence in the record to support an award of **$32,315.66** for lost wages.

### 4.  Farasat's Total Compensatory Damages

Based on the calculations set forth by the court herein, Farasat is entitled to a total of $116,401.48 in compensatory damages.

### B.  Omer Celtik

### 1.  Unpaid Wages

Omer Celtik seeks $37,952.42 in damages for unpaid wages and withheld tips.  The court previously determined Defendants were liable to Celtik for violations of 29 U.S.C §§ 203(m) and 206.  Pursuant to the court's November 13, 2014 order, Celtik testified at the December 2, 2014 hearing to prove up the methodology he used to calculate the damages sought in the motion for default.  Celtik testified that he worked for Defendants from prior to January 2010 until he quit in 2012.  He was only paid $2.13 per hour.  According to Plaintiffs' Exhibit E, Celtik worked 26.5 hours per week and was paid $56.45 per week in wages for a period from January 23, 2010, to January 21, 2011.

For a period from January 22, 2011, to December 28, 2012, Celtik worked seventeen hours per week and was paid $36.21 per week in wages.  Celtik calculated his withheld wages by multiplying the difference between what he was paid per hour, $2.13, and the minimum wage, $7.25, by the number of hours he worked per week.  For the period between January 23, 2010, and January 21, 2011, Defendants failed to pay Celtik $135.68 per week ($5.12 x 56.45 hours) that was lawfully owed to him in wages.  For the period of Celtik's employment beginning January 22, 2011, to December 28, 2012, Defendants failed to pay Celtik $87.04 per week ($5.12 x 36.21

hours) that was lawfully owed to him in wages.  There is sufficient evidence in the record to support an award of **$15,324.16** for unpaid wages.

### 2.  Withheld Tips

Celtik also seeks damages for withheld tips.  He testified that he had to pay Defendants a fee for cars parked during his shifts.  Plaintiffs' Exhibit D indicates that Celtik was charged between $0.78 and $0.90 per car.  Celtik testified that he was the lead on the account, so he was able to keep a larger portion of the tips he was given than were other valets.  Celtik calculated the tips withheld by multiplying the average number of cars parked by the amount charged by Defendants.

For a period of fifty weeks, Celtik parked approximately eighty-two cars per week, and Defendants deducted $68.30 in tips per week, totaling $3,551.60.  For a period of ninety-five weeks, Celtik parked fifty cars per week, and Defendants deducted $39.50 in tips per week, totaling $3,752.50.  Accordingly, there is sufficient evidence in the record to support an award of **$7,304.10** for withheld tips.

### 3.  Celtik's Total Compensatory Damages

Based on the calculations set forth by the court herein, Celtik is entitled to a total of $22,628.26 in compensatory damages.

## C.  Kevin McGowan

### 1.  Unpaid Wages

Kevin McGowan seeks damages for unpaid wages, including overtime, and withheld tips. The court previously granted Plaintiff's Motion for Default as to Defendants' liability for violations of 29 U.S.C. §§ 203(m), 206, 207.  McGowan was unable to attend the December 2,

2014 hearing.   The court ordered him to submit an affidavit and exhibits to explain the methodology used to calculate his damages.  McGowan filed his declaration and accompanying exhibits on December 19, 2014.  McGowan worked for Defendants from 2007 until January 20, 2011. During the relevant period, January 22, 2010, to January 21, 2011, McGowan worked a rotating schedule of either 60 or 49 hours per week.  He was paid $2.13 per hour and was not paid overtime for hours worked in excess of forty per week.  Pursuant to 29 U.S.C. 207(a), employees are to be paid one and one-half their regular rate for hours in excess of a forty-hour workweek.

According to his December 19, 2014 declaration, McGowan calculated his unpaid wages by multiplying the number of hours he worked per week by the deficit between his pay and the minimum wage, which is $5.12 ($7.25-$2.13).  He then multiplied an overtime rate of $3.63 by the number of hours in excess of forty he worked per week.  This is depicted in Exhibit B, filed with the declaration.  McGowan worked a total of 3,021 hours during the relevant period, 941 of which were overtime hours, which totaled $18,883.35.  Based on his calculations Defendants failed to pay McGowan $15,467.52 for regular wages and $3,415.83 for overtime wages that he was lawfully owed.  There is sufficient evidence in the record to support an award of **$18,883.35** for unpaid regular and overtime wages to McGowan.

### 2.  Withheld Tips

McGowan also seeks damages for tips withheld during the relevant period.  In his May 19, 2014 declaration, submitted with the motion for default judgment, McGowan stated Defendants withheld $19,139 in tips.  In his December 19, 2014 declaration, McGowan states Defendants withheld $61,499 in tips.  The December 19, 2014 declaration was ordered in lieu of McGowan's testimony at the December 2, 2014 hearing.  McGowan's December 19, 2014 declaration seeks

more than three times the amount requested in his original May 19, 2014 declaration. McGowan

provides no explanation for the significant disparity between the May 19, 2014 declaration and the

December 19, 2014 declaration.   The court held the hearing to determine the validity of the

methodology used to calculate the damages sought in the May 19, 2014 Motion for Default.

Accordingly, the court will exercise its discretion and use the numbers provided in the May 19,

2014 declaration.  McGowan stated that Defendants deducted between $1.50 and $1.75 in tips,

depending on his shift.   He explained that he calculated his withheld tips by multiplying his

estimation of the average number of cars he parked by the amount deducted by Defendants.

McGowan's Exhibit A charts the tips deducted from his shifts.  Based on the calculations provided,

Defendants deducted approximately $377 in tips per week during the relevant period.   There is

sufficient evidence in the record to support an award of **$19,139** for withheld tips, which is what

McGowan requested in his original declaration.

### 3.  McGowan's Total Compensatory Damages

Based on the calculations set forth by the court herein, McGowan is entitled to a total of

$38,022.35 in compensatory damages.

### D.  Liquidated Damages

### 1.  Applicable Law

An employer who violates sections 206 or 207 of the FLSA is liable to the employees "in

the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case

may be, and in an additional equal amount as liquidated damages."   29 U.S.C. § 216(b).   An

employer that violates section 215(a)(3) of the FLSA is liable for legal or equitable relief to include

lost wages and an additional equal amount as liquidated damages.  *Id.*  An award for liquidated damages may be limited under some circumstances:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C. § 260.  Thus, an award of liquidated damages is mandatory, unless this exception applies.

Defendants failed to appear in this case and have not provided the court with any reason to show their actions were done in good faith or that they had reasonable grounds for believing that their actions were not a violation of the FLSA.  Accordingly, the court determines that Plaintiffs are entitled to liquidated damages as a matter of law.

### 2.   Farasat's Liquidated Damages

The court determines that Farasat is entitled to $116,401.48 in compensatory damages.  Of the compensatory damages, Farasat is entitled to liquidated damages in an equal amount of unpaid wages of **$23,918.08** for Defendants' violation of sections 206, and entitled to liquidated damages in an equal amount of unpaid lost wages of **$32,315.66** for Defendants' violations of section 215.

### 3.   Celtik's Liquidated Damages

The court determines that Celtik is entitled to $22,628.26 in compensatory damages.  Of the compensatory damages, Celtik is entitled to liquidated damages in an equal amount of unpaid wages of **$15,324.16** for Defendants' violations of section 206.

**Memorandum Opinion and Order – Page 12**

### 4. McGowan's Liquidated Damages

The court determines that McGowan is entitled to $38,022.35 in compensatory damages. Of the compensatory damages, McGowan is entitled to liquidated damages in an equal amount of his unpaid regular and overtime wages, **$18,883.35** for Defendants' violation of sections 206 and 207.

### 5. Total Damages for all Plaintiffs

The chart below sets forth the damages incurred by all Plaintiffs[*]:

| Plaintiff | Compensatory Damages | Liquidated Damages | Total Damages |
|---|---|---|---|
| Arash Farasat | Unpaid wages: $23,918.08<br><br>Lost wages: $32,315.66<br><br>Withheld tips: $60,167.74<br><br>Total: **$116,401.48** | Unpaid wages: $23,918.08<br><br>Lost wages: $32,315.66<br><br>Total: **$56,233.74** | **$172,653.22** |
| Omer Celtik | Unpaid wages: $15,324.16<br><br>Withheld tips: $7,304.10<br><br>Total: **$22,628.26** | Unpaid wages: $15,534.16<br><br>Total: **$15,534.16** | **$37,952.42** |
| Kevin McGowan | Unpaid wages (regular and overtime): $18,883.35<br><br>Withheld tips: $19,139<br><br>Total: **$38,022.35** | Unpaid wages: $18,883.35<br><br>Total: **$18,883.35** | **$56,905.70** |

---

[*] Plaintiffs are not entitled to, nor did they request, liquidated damages in an equal amount of their withheld tips.

### III.   Attorney's Fees

Plaintiffs request attorney's fees in the amount of $45,105.  The court must determine whether the requested amount is reasonable.  The record reflects that Plaintiffs' counsel, Derek Braziel, has been licensed by the State of Texas for twenty years, and Michael O'Keefe Cowles has been licensed by the State of Texas for three years.  Mr. Braziel's practice primarily consists of handling cases involving collective and class actions for overtime pay.  His hourly rate is $495 per hour. The record reflects that a senior paralegal and a senior associate attorney assisted Mr. Braziel in litigating this case.  Their rates are $195 per hour and $295 per hour, respectively.  The senior associate, Meredith Mathews, has been licensed by the State of Texas for nine years.  The court is familiar with the usual and customary hourly rates charged by attorneys in the Dallas legal community with the ability, competence, experience, and skill similar to that of Plaintiffs' counsel for the services performed in cases of this nature.  Accordingly, the court finds that the hourly rates of $495 for Mr. Braziel, $195 for his paralegal, and $295 for Ms. Mathews are reasonable.

Mr. Cowles's practice primarily consists of handling cases involving low-wage worker rights issues and suits under the FLSA.  His hourly rate is $ 250 per hour.  The court finds that this hourly rate is within the range of the usual and customary rate charged by attorneys in the Dallas legal community with the ability, competence, experience, and skill similar to that of Plaintiffs' counsel for the services performed in cases of this nature.  Accordingly, the court finds that the hourly rate of $250 is reasonable.

Plaintiffs have produced evidence that their counsel has expended 171.95 hours for obtaining a default judgment.  Although Plaintiffs assert that their counsel exercised billing judgment by excluding certain hours, the number of hours excluded is not reflected.  The court,

therefore, only has a conclusory statement to support this assertion.  Counsel should exercise billing judgment and provide the court specific support as to how billing judgment was exercised. This is lacking in this case.  Based on its experience in awarding attorney's fees over the past seventeen years in employment and labor-related cases, the court determines that a **10 percent** reduction to the hours expended by each person who performed services is appropriate.  The court concludes that the number of hours expended, less a 10 percent reduction, was reasonably expended and necessary to obtain a default judgment in this action.  Accordingly, the court determines that Plaintiffs are entitled to an award of attorney's fees in the amount of **$40,594.73**.

### IV.    Conclusion

For the reasons herein stated, the court **grants** Plaintiffs' Motion for Default Judgment as to damages.  Plaintiffs are entitled to and shall recover judgment, jointly and severally, against RP Managing Partners, LLC, R.P. Valet Parking, Inc., and Roozbeh "RP" Payervand in the following amounts: Arash Farasat, **$172,635.22** ($116,401.48 in compensatory damages and $56,233.74 in liquidated damages); Omer Celtik, **$37,952.42** ($22,628.26 in compensatory damages and $15,324.16 in liquidated damages); and Kevin McGowan, **$56,905.70** ($38,022.35 in compensatory damages and $18,883.35 in liquidated damages), plus all allowable and reasonable costs.  The court also concludes that Plaintiffs are entitled to recover from Defendants, joint and severally, reasonable attorney's fees in the amount of **$40,594.73**, $23,310 to the Equal Justice Center, for whom Michael O'Keefe Cowles works; and $17,284.73 to Lee & Braziel, LLP, for whom Derek Braziel works.  The court will enter judgment by a separate document pursuant to Federal Rule of Civil Procedure 58.

**It is so ordered** this 26th day of January, 2016.

Sam A. Lindsay
United States District Judge